IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:11-CR-028-02 |
| | ) | |
| RAFAEL VILLARREAL, SR. | ) | |

<u>RAFAEL VILLARREAL'S SENTENCING MEMORANDUM</u>

COMES NOW Defendant RAFAEL VILLARREAL, SR. and hereby files this Sentencing Memorandum to assist the Court in imposing a reasonable sentence in this case.

Defendant will first review issues concerning application of the Sentencing Guidelines.  Second, Mr. Villarreal will discuss grounds that justify imposing a sentence below the otherwise applicable range from the Guidelines.  Finally, Defendant will review the financial aspects of the Presentence Investigation Report (hereinafter "PSR") and will demonstrate that the Court should not impose a fine considering that Mr. Villarreal recently concluded an agreement with the Internal Revenue Service that calls for him to pay $226,810.50 in taxes, interest and penalties.

**GUIDELINES ISSUES**

The final PSR recommends a range of 97-121 months under the Sentencing Guidelines.  Defendant submitted three Guidelines objections to the Probation Officer.  The final PSR rejected each

of these objections.  As will be set out below, the Court should grant these objections and recalculate the Guidelines.

### Sophisticated Means

In paragraph 32 the PSR recommends the use of the "sophisticated means" specific offense characteristic found at U.S.S.G. §2T1.1(b)(2).  The Guidelines note that all tax violations "involve some planning", but this enhancement only applies when there is "unusually sophisticated efforts to conceal the offense" (emphasis added).  U.S.S.G. §2T1.1, Background Notes.

Here, the PSR recommends that the Court use this enhancement because of the "second set" of financial records kept by Atlanta Meat Company.  However, these records in no way impacted the detection or investigation of the offenses.  No one at the company used the second set of financial records for anything other than tracking the diverted cash.  The second set of books was never shown to anyone or used in the preparation of individual or corporate tax returns.  The scheme was concealed not because of the second set of books, but because the corporation and its members failed to provide truthful information to their accountant. Failing to confess to a crime is very different than using sophisticated means to conceal that crime.

The Eighth Circuit reversed a District Judge who used the "sophisticated means" enhancement in United States v. Hart, 324 F. 3d 575, 579-80 (8th Cir. 2003).  The Defendant in Hart failed to

2

keep records of his diverted income, and took additional steps to route the income through other entities or institutions. The Eighth Circuit held that when a Defendant takes steps which cause later difficulty in documenting the tax loss, this does not support the use of the enhancement for sophisticated means. In many ways, the second set of books here is the opposite of what happened in Hart. Here, the second set of books made it easier for the government to prove its case and calculate tax loss. As a result, there is even less reason to use the sophisticated means enhancement here as opposed to what happened in the Hart case.

The Probation Officer's response to Hart is unpersuasive. The final PSR suggests that this Court should ignore the Hart decision because that case involved a defendant who kept no records, as opposed to the accurate second set of books found in the present case. With due respect, the Probation Officer misses the point. The records here did nothing to prevent or hinder the investigation or prosecution of this case. As stated before, the second set of books merely kept track of diverted cash, nothing more. The Court should reject Paragraph 32 of the PSR and should recalculate the Guidelines without using this enhancement.

### Role in the Offense

This case involves two conspiracies, one to violate the tax laws, the other to violate the immigration statutes. The PSR recommends applying a four-level enhancement to Defendant's

3

Guidelines calculations for "role in the offense."  The Probation
Officer suggests that Mr. Villarreal was an "organizer or leader".
Each such recommendation is incorrect.

Concerning the tax scheme, the role in the offense issue is
found at paragraph 34 of the PSR.  The evidence clearly showed that
Rhett Maughon was the person who directed all financial steps in
the company.  Rhett Maughon handled all banking and IT issues, he
was the only person who dealt with the payroll company and was the
only person who worked with the accountant who filed the corporate
returns.  Mr. Villarreal had no role whatsoever in the tax scheme
other than accepting the cash payments and communicating with the
company's employees.

A role enhancement is likewise not supported by the facts
underlying the immigration fraud scheme.  Paragraph 40 of the PSR
discusses this question.  Mr. Villarreal did nothing other than
hire workers who were undocumented.  He did supervise such workers,
but their work had nothing to do with criminal activity.  His
supervisory duties related to the operation of the company's
legitimate business, and not with the illegal conduct.

The final PSR concedes that Mr. Villarreal was "subordinate to
Rhett Maughon in the day-to-day operations."  Nevertheless, the
Probation Officer's response to these twin objections is to point
to Defendant's title and authority within the company.  Again with
all due respect, the final PSR is incorrect.  A role enhancement

4

requires more than a title on a corporate chart. It requires active decision-making responsibilities <u>in the crime itself</u>. The crimes here were not orchestrated by Mr. Villarreal, and the Court should therefore not use the role in the offense enhancement.

## Acceptance of Responsibility

In Paragraph 49, the Probation Officer suggests that the Court not award the reduction for Acceptance of Responsibility. Pointing to Commentary that notes this reduction should normally not apply in cases involving obstruction of justice, the final PSR suggests that this is not an "extraordinary" situation justifying use of the adjustment. Again, the final PSR is wrong.

Mr. Villarreal does not seek the 3-level reduction often awarded to defendants who plead guilty. He seeks only the 2-level reduction, recognizing that a plea in the middle of trial does not justify the 3-level reduction. However, this is a case where awarding this reduction is appropriate. Defendant admitted to his crimes. He has fulfilled his obligation to file amended tax returns. Mr. Villarreal has entered into an agreement with the IRS to pay back taxes, interest and penalties, totaling $226,801.50. This is such an unusual case as to justify the 2-level reduction for acceptance of responsibility.

## A SENTENCE BELOW THE GUIDLEINES IS JUSTIFIED

No matter what Guideline range the Court uses, Defendant suggests that this case justifies a sentence lower than what is

recommended by the Sentencing Guidelines. Mr. Villarreal has already served almost 14 months in pretrial detention. His codefendants will almost certainly serve their sentences in minimum-security facilities. The time in pretrial detention and the comparison to the conditions of confinement facing the codefendants both justify a sentence below the Guideline range.

The Eleventh Circuit looked at the question of whether conditions of pretrial confinement might justify a lower sentence in United States v. Pressley, 345 F. 3d 1205 (11th Cir. 2003). The District Judge there wanted to grant a two and one-half year downward departure based on the 6 years the defendant had spent in pretrial confinement. However, the District Court refused the reduction because the judge believed he was not authorized to do so. The Eleventh Circuit reversed, noting that conditions of pretrial confinement can justify a downward departure, and that such facts would justify the two and one-half year reduction in that case. In United States v. Jayyousi, 657 F. 3d 1085 (11th Cir. 2011) the Court of Appeals confronted a reduced sentence awarded to Jose Padilla. The District Court reduced Padilla's sentence by 110 months largely based on the harsh conditions of his prior confinement and then lowered his sentence by another 42 months to account for the time Padilla spent in pre-trial confinement, for a total departure of 152 months. "Although some downward variance is allowed in this circumstance, the district court abused its

discretion when it varied Padilla's minimum Guidelines sentence downward by 42 percent, a period more than three and one-half times his period of actual pretrial confinement." Id., 657 F. 3d at 1118.  In other words, any reduction for conditions of pretrial confinement must be tied to the facts of a particular case.

Here, there is a great disparity between the conditions under which each of the defendants will serve their sentences.  Prior to the indictment, Mr. Villarreal and his codefendants were local businessman living established lives with their families.  However, on the day that the indictment was unsealed, they were treated quite differently.  Counsel for Rhett and Marcus Maughon were instructed to bring these defendants to court, after which they were processed by the U.S. Marshal and immediately released on unsecured bonds.  Early that same morning, a phalanx of armed federal agents swooped into the house where Mr. Villarreal and his family reside in an upper-middle class neighborhood.  His family was detained at gunpoint while federal agents swarmed through and searched their home.  That evening, Rafael Villarreal went to sleep at the Robert M. Deyton Pretrial Detention facility, the place he has slept every evening for the past almost-14 months.  He has had no physical contact with his family.  His phone calls to his business partners are all monitored.

Not only have the three Defendants faced disparate conditions since the indictment was unsealed, they likewise will be treated

differently concerning the conditions under which they will serve their sentences.  It is well established that most Defendants go to a Federal Prison Camp when they have no prior record and are sentenced for crimes like those involved here.  Mr. Villarreal has already served almost 14 months in conditions that are more onerous than those that will be imposed on Rhett and Marcus Maughon, who will almost certainly serve their entire sentences at a Prison Camp.  Additionally, it is likely that Mr. Villarreal will be designated to a higher security facility for the remainder of his sentence, because of his immigration status.  While that by itself might not justify a lower sentence, the comparison of his situation with that of his codefendants would authorize the court to impose a below-Guidelines sentence on Mr. Villarreal.

Defendant has already served almost 14 months in pretrial detention.  No matter what sentence is imposed on the codefendants, they will almost certainly do their time in facilities far less rigorous than the prison to which Mr. Villarreal will be designated.  A below-Guidelines sentence is justified for each of these reasons.

## THE COURT SHOULD NOT IMPOSE A FINE

Defendant suggests that the Court should not impose a fine in this case.  First, the PSR contains multiple errors when discussing Mr. Villarreal's financial situation.  Additionally, Defendant suggests that his few remaining assets would be better used paying

8

his obligations to the IRS instead of paying for a criminal fine.

### Incorrect Financial Information in the PSR

Defendant objected to several statements in the PSR concerning Mr. Villarreal's financial situation. First, only 2 of the vehicles listed in paragraph 86 belong to him: the Cadillac listed in paragraph (b) and the Land Rover listed in paragraph (e). The Lexus in paragraph (a) and the Honda in paragraph (c) are vehicles for which he co-signed with other persons, and Mr. Villarreal does not own either of these cars. He has never had any interest in the vehicles listed in paragraphs (d), (f) and (g). The vehicle listed in paragraph (d) may belong to his son, who is Rafael Villarreal, Jr. The Probation Office refused to change this paragraph, simply because this information was "obtained from the public record."

Defendant also objected to the list of real property set out in paragraph 87 of the PSR. Paragraphs (a) and (e) concern the same piece of property; the home where Mr. Villarreal and his family reside. Gwinnett County for some reason lists the property on its tax rolls under the address found in paragraph (a), while the mailing address is that set out in paragraph (e). Mr. and Mrs. Villarreal bought this house and land in 1999. They refinanced the property, and later paid off the mortgage in full several years ago. As a result, this is a single asset, currently valued at approximately $236,500, as described in paragraph (a). There is

9

another part of paragraph 87 to which Defendant objected. Paragraph (d) sets out a piece of property that Mr. Villarreal and his wife bought in Tampa, Florida. This property was sold in August, 2011, and he no longer owns this asset.

Finally, Defendant has not received a salary from the company since he was incarcerated in January, 2011. He objected to Paragraph 91 for this reason, but the final PSR does not reflect this change.

As a result, the PSR contains a misleading picture of Defendant's assets and cash flow. He does not own vehicles worth over $200,000. He does not own two parcels where his home is found, but instead this is a single asset. He sold the house in Tampa. When his previous salary is removed, his family's monthly cash flow exceeds their income by almost $10,000.

### Defendant's Agreement with the IRS

As part of his promises contained in the Plea Agreement, Mr. Villarreal filed amended tax returns to reflect the unreported income at the heart of the tax conspiracy. Additionally, he recently executed a Form 906, a "Closing Agreement on Final Determination Covering Specific Matters."

In this Closing Agreement, Mr. Villarreal agreed that he owed the IRS $226,810.50 in taxes, interest and penalties related to the unreported income at the crux of this case. Of this amount, $129,606 is a civil penalty he agreed to pay. As part of this

Closing Agreement Mr. Villarreal agreed to waive all defenses or restrictions against the assessment or collection of these taxes, penalties and interest.  He further agreed to not challenge the underlying tax liabilities, additions to tax, penalties or interest.

Defendant suggests that an accurate view of his financial situation, along with consideration of the Closing Agreement, both counsel against the imposition of a criminal fine in this case. While Defendant previously had significant assets, his current situation is less promising.  His family pays out far more each month that they earn, since Mr. Villarreal previously provided all of their income.  They have sold significant assets.  Defendant will need to marshal over one-quarter million dollars to fulfill his promises in the Closing Agreement.  A criminal fine in this case will be unduly burdensome and will in many ways replicate the civil fine to which he has already agreed.

## CONCLUSION

Based on the foregoing, Defendant asks that this Court change the Guideline calculations, impose a below-Guidelines sentence, and not impose a criminal fine.

(Signature on following page)

11

Dated: This 17th day of February, 2012.

>                         Respectfully submitted,
>
>                         */s/ Paul S. Kish*
>                         PAUL S. KISH
>                         Georgia State Bar No. 424277
>                         ATTORNEY FOR RAFAEL VILLARREAL, SR.

Kish & Lietz, P.C.
225 Peachtree Street, NE
1700 South Tower
Atlanta, Georgia 30303
404-588-3991; Fax 404-588-3995
paul@law-kl.com

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing filing into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 17th day of February, 2012.


/s/ Paul S. Kish
PAUL S. KISH
Georgia State Bar No. 424277
ATTORNEY FOR RAFAEL VILLARREAL, SR.

Kish & Lietz, P.C.
225 Peachtree Street, NE
1700 South Tower
Atlanta, Georgia 30303
404-588-3991; Fax 404-588-3995
paul@law-kl.com